IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BRIAN EVANS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GILEAD SCIENCES, INC., *et al.*,<br><br>　　　　Defendants. | Case No. 20-cv-00123-DKW-KJM<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING ACTION WITH LEAVE TO AMEND.**[1] |

Plaintiff Brian Evans, proceeding *pro se*, filed an application to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 4, as well as a civil complaint against Gilead Sciences, Inc., Dkt. No. 1, alleging that Truvada, a prescription drug the company manufactured, caused him to develop diffuse arthralgia. Because the IFP Application reflects that Evans does not have the ability to pay the filing fee in this case, the Court GRANTS the IFP Application. However, because EVANS does not allege a claim in his complaint, this action is DISMISSED with leave to amend.[2]

---

[1] Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

[2] The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to screening and can order the dismissal of any claims it finds "frivolous or malicious"; "fails to state a claim on which relief may be granted"; or "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B).

## I. The IFP Application

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

Here, Evans has made the required showing under Section 1915(a). In the IFP Application, Dkt. No. 4, Evans states that he is unemployed, he receives no other income, and he has $29 in a checking or savings account. Evans further states that the only item or property of value that he owns is his late mother's car, estimated to be valued at $800. In light of these figures, Evans' income falls below the poverty threshold identified by the U.S. Department of Health & Human Services' ("HHS") 2020 Poverty Guidelines.[3] In addition, Evans has insufficient assets to provide security. As a result, the Court GRANTS the IFP Application, Dkt. No. 4.

## II. Screening

The standard for dismissal of a complaint that fails to state a claim is the same

---

[3] *See* HHS Poverty Guidelines for 2020, *available at* https://aspe.hhs.gov/poverty-guidelines.

under 28 U.S.C. Section 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Jones v. Schwarzenegger*, 723 F. App'x 523, 524 (9th Cir. 2018); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same standard under Section 1915A). The Court must take the allegations in the complaint as true, excluding those allegations that are merely conclusory, and if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the Court must dismiss the action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court liberally construes a *pro se* complaint, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court cannot act as counsel for a *pro se* litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In the Complaint, Evans asserts that Defendant Gilead Sciences, Inc. (Gilead) manufactured the prescription medication Truvada. *See* Dkt. No. 1 at 4; Dkt. No. 1-1. Evans claims his healthcare provider prescribed him Truvada without any testing or blood work. As it pertains to Gilead, Evans alleges that in 2001 when Truvada was approved, Gilead knew that Truvada had to be given in high doses to be effective, and thus, it could cause damage to the kidneys and bones of those who

ingest it. Gilead, however, allegedly failed to adequately disclose those dangers on Truvada's label. Evans further asserts that Gilead had developed an unidentified, "safer medication" but refused to make it available until the Truvada patents expired and Truvada could be purchased from generic prescription drug manufacturers. *See* Dkt. No. 1 at 4. As a result of ingesting Truvada, Evans alleges that he developed diffuse arthralgia (joint pain) and is unable to work. To support his claim, Evans attaches a letter from his treating physician, stating in part, that Evans did not have "multi-joint pain prior to taking the medication." Dkt. No. 1-1. Evans seeks $1,000,000 in damages for injuries and lost wages.

### A. The Complaint is Deficient

Liberally construed, Evans' complaint asserts product liability causes of action sounding in negligence and strict liability for defective design and failure-to-warn. *See, e.g.*, *Tabieros v. Clark Equip. Co.*, 944 P.2d 1279, 1297–98 & n.11, 1313 (Haw. 1997) (stating the elements of a product liability claim for strict liability, negligence, and failure-to-warn under Hawaii law); *Acoba v. General Tire, Inc.*, 986 P.2d 288, 302–04 (Haw. 1999); *see also Segovia v. Bristol-Myers Squibb Co.*, No. 15-00519 DKW-RLP, 2016 WL 1587220, at *2 (D. Haw. Apr. 19, 2016) (product liability claims involving anti-coagulant prescription drug); *Forsyth v. Eli Lilly & Co.*, No. 95-00185 ACK, 1998 WL 35152135, at *3 (D. Haw. 1998) (strict liability

4

claims involving the drug Prozac). Evans alludes to other "lawsuits" involving Truvada, and a cursory review of the federal dockets reveals that this action is similar to product liability actions filed against Gilead in other jurisdictions for injuries arising from Truvada. *See, e.g.*, *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 814–17 (N.D. Cal. 2019) (class action); *Dechow v. Gilead Scis., Inc.*, 358 F. Supp. 3d 1051, 1052–53 (C.D. Cal. 2019).

Evans' skeletal complaint, however, is fatally flawed. First, Evans has not alleged a design defect in Truvada, *i.e.*, a flaw in the chemical composition of Truvada, which renders the medication "unreasonably dangerous." *Tabieros*, 944 P.2d at 1297; *id.* at 1310–13 (discussing the three ways a plaintiff may establish a defect for purposes of either strict liability or negligence: (1) the "consumer expectation" test; (2) the "risk-utility" test; and (3) the "latent danger" test); *Acoba*, 986 P.2d at 304. Evans has only asserted that Truvada is harmful to a consumer's kidneys and bones in "high doses." But if that were the legal standard for a design "defect" virtually all medications (or any product consumed for that matter) could be deemed defective. As such, the complaint amounts to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678) (quoting *Twombly*, 550 U.S. at 555). "[F]urther factual enhancement" is required to state a claim. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Second, Evans has not alleged that a defect or hazard in Truvada (whether known or unknown) "proximately [*i.e.*, legally] caused" his joint pain. *See Tabieros*, 944 P.2d at 1297, 1313 (alterations in original). Evans has merely alleged in conclusory fashion that Gilead's "medication caused [Evans'] Diffuse Arthralgia." The letter from Evans' treating physician does nothing to bolster causation. It simply states that Evans had "no previous history of multi-joint pain prior to taking the prescription" Truvada. Dkt. No. 1-1. Thus, even if Gilead "had a duty to warn of the dangers arising from" ingesting high doses of Truvada and this was "a foreseeable use of the [medication]," Evans' failure-to-warn claim founders because he has not set forth sufficient facts to show that Truvada was "the proximate cause" of his injuries. *Tabieros*, 944 P.2d at 1297–98 n.11 (quoting *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1179 (9th Cir. 1997)). Because the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that [Evans] is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, the complaint fails to allege sufficient facts to support a claim under any principle of law. Accordingly, this action is DISMISSED.

**B.     Leave to Amend the Complaint**

Notwithstanding Evans' failure to state a claim, the Court cannot say that the

deficiencies in the complaint could not "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (citation omitted); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Because it may be possible for Evans to allege one or more plausible claims for relief, *see, e.g.*, *Holley*, 379 F. Supp. 3d at 814–17; *Dechow*, 358 F. Supp. 3d at 1052–53, the Court will allow Evans leave to amend to attempt to do so.

To assist Evans, the Court will mail Evans a copy of a form complaint for use in a civil *pro se* proceeding, such as this one. Should Evans choose to use the form, he should answer **all of the questions** clearly and concisely. In particular, Evans should set out each claim under a separate label or heading. Under each claim, Evans must write short, plain statements telling the Court: (1) the specific basis of this Court's jurisdiction; (2) the legal right(s) he believes were violated; (3) the name of the defendant(s) who violated those right(s); (4) exactly what each defendant did or failed to do and the underlying facts that provide support; (5) *how the action or inaction of a defendant is connected to the violation* of Evans' right(s); (6) what specific injury he suffered because of a defendant's conduct; and (7) what relief he seeks. Should Evans choose to file an amended complaint, he may not incorporate any part of the original complaint, Dkt. No. 1, in the amended complaint. Rather, all allegations must be re-typed or re-written in their entirety. *See Lacey v.*

7

*Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*); LR 10.4.[4]

## CONCLUSION

Evans' application to proceed *in forma pauperis*, Dkt. No. 4, is GRANTED. This action is DISMISSED WITHOUT PREJUDICE and with leave to amend as set forth herein.

Evans may have until **May 1, 2020** to file an amended complaint. **The Court cautions Evans that failure to file an amended complaint by May 1, 2020 may result in the automatic dismissal of this action without prejudice.**

The Clerk is directed to mail Evans a copy of form "Pro Se 1" "Complaint for a Civil Case."

IT IS SO ORDERED.

Dated: March 27, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Brian Evans v. Gilead Sciences, Inc.*; Civil No. 20-00123-DKW-KJM; **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING ACTION WITH LEAVE TO AMEND.**

---

[4]*Pro se* litigants must comply with local rules. *See, e.g., Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995). A copy of the Local Rules is available on the Court's public website. *See* Civil Local Rules, Dist. of Hawaii (effective Sept. 1, 2019), *available at* https://www.hid.uscourts.gov/base.cfm?pid=3&mid=11.