IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
APR 01 2020
at 11 o'clock and 35 min. A M
SUE BEITIA, CLERK

BRIAN EVANS,

    Plaintiff,

Case No. 20-cv-00123-DKW-KJM

v.

GILEAD SCIENCES, INC, et al,

    Defendants.

**AMENDED COMPLAINT PER THE ORDER OF THE COURT FOR 1) Strict Products Liability – Failure to Warn; 2) Negligence and Gross Negligence – Design Defect and Failure to Warn; 3) Fraud, and 4) Breach of Express and Implied Warranty.**

Plaintiff, Brian Evans, proceeding *pro se*, herein files his Amended Complaint.

### The Complaint

Plaintiff complaints that Defendant Gilead Sciences, Inc (Gilead) manufactured the prescription medication Truvada. Plaintiff claims his healthcare provider, contrary to their obligation to do so, prescribed the medication without any testing or bloodwork. Plaintiff alleges that in 2001, when

Truvada was approved, Gilead knew that Truvada had to be given in high does to be effective, and thus, it could cause damage to the kidneys and to the bones of those who ingest it. Gilead failed to adequately disclose those dangers on Truvada's label and had a "safer medication" but refused to make it available until Truvada patents expired and Truvada could be purchased from generic drug manufacturers. Intentionally omitting the warnings from their labeling caused the Plaintiff to be diagnosed with Diffuse Arthralgia, secondary to use of Truvada, as noted by a doctor through Kaiser Permanente, Plaintiff's healthcare provider (although the doctor who wrote the letter was from the Kaiser branch in Georgia, where Plaintiff was visiting at the time, Plaintiff returned home to Hawaii only to have the medication continuously prescribed, again, with no request for any blood work to see if this medication was even compatible to the Plaintiff, and continued to prescribe it despite the diagnoses which is fully available through all of the Kaiser network.

## DESIGN DEFECT IN TRUVADA

The first warning was issued in 2002 when the company made statements about the drugs not causing kidney failure despite the clinical research documentation included on the warning label.

The second warning was released when the company's sales representatives were caught downplaying the dangers of kidney problems. The final warning was issued when a promotional web link failed to mention the risks of Truvada on kidneys.

For patients who have taken Truvada, there is a higher chance of getting Osteoporosis than to those who have not taken the drug. A human body is made up of a collection of bones called the skeletal system. The skeletal system is an essential system of the body because it provides support and stability. Even though the weakening of bones occurs naturally in most people with

age, Truvada has been shown to accelerate the loss of bone density resulting in a disease called Osteoporosis among other joint and bone conditions.

A study was conducted to analyze the risks of bone problems on patients who had taken Truvada and those who had not. The study found out that patients who had taken the drug were at a higher risk of developing bone problems. Plaintiff's own doctor has confirmed that to be exactly was has occurred to him as a result of this specific medication.

In 2002, Gilead Sciences received a notice from the Food and Drug Administration about making wrong and deceptive comments about the product to the consumers. The sales representatives failed to mention the dangers of the drug on a person's skeletal system, even though the FDA had included the bone fissures as a risk on the warning label.

In the following year, Gilead Science Inc. received another warning from the FDA about the same issues, but they failed to comply.

FDA for the third time issues another warning in a bid to have the company remove a sponsored link that had failed to mention the risk of bone problems from taking the drugs.

In 2018, Gilead Company Inc. was named as a defendant in multiple lawsuits from claims about their dangerous drug called Truvada. Gilead through its lawyers, filed a motion to dismiss the case, arguing that they were blocked by federal law and the design defect allegations. Their court denied their proposal, which meant the case would proceed to trial.

A few patients have sued Gilead Sciences Inc. on claims that the pharmaceutical company intentionally withheld information on a safer version of the drug from the market. The reason was in a scheme to maximize profits from it. Consequently, hundreds of thousands of people

living with HIV got severe and deadly complications. The injuries could have been avoided if only the company had disclosed the information about the safer alternative drug.

In the lawsuit, affected patients argued that Gilead Sciences Inc. was aware of the dangers of Truvada, which prompted them to develop a safer version. The company executives had deliberately stopped the production of the more reliable version of the drug until the Truvada patent was fixed to expire. The move was a means to reap high profits from the sale of the drug. As a consequence, patients suffered from kidney failure and bone density for ten years. The Plaintiff was prescribed this medication in October, 2018, and no request was made to see if it was safe for him to take.

The original formulation of the drug held little sales potential, however, because it had to be given intravenously. Gilead scientists modified its chemical composition to create a drug that could be taken orally. That medicine — called tenofovir disoproxil fumarate, or simply TDF — was approved by the federal Food and Drug Administration in October 2001.

It was originally sold under the brand name Viread. Later it was combined with other HIV medicines and sold under additional brand names, including Atripla, Truvada, Stribild and Complera.

The lawsuits say that Gilead knew when Viread was approved in 2001 that it had to be given in high doses to be effective, which meant it could damage the kidneys and bones. Yet the company failed to adequately disclose those dangers in the medicine's label, the lawsuits say.

At the time of the drug's approval, Gilead scientists were already working to reduce its adverse effects. In April 2001, the scientists published research on a different chemical version of the medicine called tenofovir alafenamide fumarate, or TAF.

That animal study showed TAF had a thousand-fold greater activity against HIV than the original medicine invented in Europe, raising the possibility that it would have far less toxicity.

Gilead then paid doctors across the country to give TAF to patients in small clinical trials. The positive results of those studies were not published for years — secrecy that the lawsuits filed Tuesday say was "an act of extreme malice."

Instead, in October 2004, Gilead abruptly announced that it was ending research on TAF after an "internal business review." And it continued to pour money into selling the older drug, which was bringing in billions of dollars each year.

The company also continued to quietly apply for new patents on TAF — the drug it had said it would no longer be developing.

More than six years after that 2004 announcement, with the older drug's patent running out, an executive told investors about "an interesting new molecule" the company had added to its research plans. That drug was TAF. The company then began publishing the results of the earlier studies.

In November 2015, the FDA approved TAF in a combination pill with three other medicines. The drug was called Genvoya. In short, the Defendants were defrauding those taking this medication, including the Plaintiff, for their own financial benefit. Plaintiff has now suffered irreversible damages to his bones.

The Plaintiff did not allege that a defect or hazard in Truvada caused him joint pain. His doctor did, in a sign letter on Kaiser Permanente letterhead, after the doctor obviously reviewed his records and indeed admits as such in that letter (See **EXHIBIT A**). Doctors are extraordinarily hesitant to ever write a letter such as that on their letterhead for fears of reprisal within their own


organizations. Please note that despite the Order from this Court to Amend, as was stated in Your Honor's Order, that no form was sent to the Plaintiff with Your Honor's Order to "answer all of the questions clearly and concisely." Therefore, Plaintiff is Amending this Complaint in this way. If there's something missing, Plaintiff will rectify that one any form, should this Amended Complainant not suffice.

The drug maker sought to have the California state case dismissed. Then, in February 2019, the Superior Court of California in Los Angeles allowed plaintiffs' claims to move forward.

"This ruling is a tremendous victory for HIV/AIDS patients in their quest for justice regarding the life-threatening physical harm that Gilead has caused and we thank Judge Kuhl and the court for allowing these cases to proceed," attorney for plaintiffs Arti Bhimani said in a statement.

## CLAIMS AS REQUESTED BY YOUR HONOR

1. Jurisdiction applies under Diversity Jurisdiction. Gilead conducts business in Hawaii, distributes its product here, and provides it's medication to every hospital in Hawaii and is therefore subject to Diversity Jurisdiction.
2. Truvada failed and fraudulently permitted a medication that it knew caused bone issues to those who took the medication, knowing it had a safer medication that would have prevented Plaintiffs irreversible injuries.
3. Gilead knowingly permitted this medication to be distributed despite FDA warnings that the problems the Plaintiff is now suffering from, and failed to issue any warnings until 2018, despite knowing of these effects since 2001.
4. Gilead failed to properly warn patients of the side effects long after Plaintiff began taking the medication, and as is required in prescribing this very serious medication, failed to

take any blood tests to determine if the Plaintiff was a candidate for this medication. In one of many studies including John Hopkins University, it is very clearly stated, "All patients need to have a negative HIV antibody test (4th generation preferred) prior to initiation of PrEP." PrEP being Truvada.

No such blood test was ever taken by Plaintiff's provider until the damage and diagnosis had been done, nearly two years after the Plaintiff was prescribed it in Georgia, then again in Hawaii, without a single blood test to even see if he were HIV negative (which he is) or at risk of bone issues, which Kaiser itself has made clear he does as a direct result of this medication.

5. The action or inaction has caused Plaintiff with Diffuse Arthralgia. It is hard to work, and as a performer, impossible to dance without being able to perform. It's the Plaintiff's job (See **Exhibit B**).

6. Plaintiff seeks financial compensation to aid in his inability to no longer perform in the manner in which he was previously able to.

As one of thousands of lawsuits claim, and have survived Motion's to Dismiss, the real reason Gilead abandoned its TAF (tenofovir) design in 2004 was not because TAF could not be sufficiently differentiated from TDF; (d) Gilead purposefully withheld the TAF design, which it knew was safer than TDF, to make more money; and (e) Gilead knew to warn doctors to frequently monitor all patients for the adverse effects of TDF toxicity using more than one marker of kidney function even though it did not do so in its warnings to doctors in the U.S."

Gilead intentionally omitted from its prescriber and patient labeling an adequate warning regarding the need for doctors to monitor all TDF patients, on a frequent, specific schedule, for the adverse effects of TDF-associated bone and kidney toxicity. Gilead intentionally omitted an

adequate monitoring warning in order to conceal the true risk of its TDF Drugs, and to inflate sales by inducing doctors to prescribe, and patients like Plaintiffs to consume, its TDF Drugs. By providing inadequate warnings that were contrary to those it gave with respect to the exact same drugs in the EU, Gilead partially disclosed material facts. Gilead had a duty of complete disclosure once it began to speak.

Gilead's sales reps and CEO claimed TDF was "a 'miracle drug,' had 'no toxicities,' was 'benign,' and 'extremely safe'," according to lawsuits. In fact, as early as 1997, studies already showed it had significant bone and kidney toxicity.

"Gilead has shown a disregard for its patients' health in order to reap outsized profits from its TDF medications."

Source: Michael Lujano, plaintiff, AIDS Healthcare Foundation (also currently suing Gilead).

## CONCLUSION

The Complainant was required to take an HIV test prior to being prescribed this medication, and to confirm Plaintiff was not at any risk for the side effects he has now suffered. The Defendants, and potential co-defendants, never did so. Their negligence caused the Plaintiff the harm he now suffers, as further discovery will show during the course of this case.

The Plaintiff is suing for:

1) Strict Products Liability – Failure to Warn; 2) Negligence and Gross Negligence – Design Defect and Failure to Warn; 3) Fraud, and 4) Breach of Express and Implied Warranty.

As noted, Plaintiff will add additional Defendants (which is why the Plaintiff named DOES Defendants in this case as records are being compiled to add individual Defendants).

The Plaintiff's Allegations are true, confirmed by a doctor by his own provider (something a Court rarely sees, an actual admission by a doctor), an actual admission that these injuries did not occur prior to these prescriptions without regards to Defendants possible side effect had he had not been negative. The Defendants didn't even care to check this prior to prescribing as they would ibuprofen). The facts herein are similar to the current case, *Abrams v. Gilead, Case CGC-19-579140, San Francisco Superior Court,* filed on September 10, 2019.

Respectfully Submitted,

Brian Evans

March 30, 2020